Mona Lisa GROVES, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1182S439.

Supreme Court of Indiana.

Dec. 13, 1983.

David M. Shaw, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Latriealle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted, after a trial by jury, of forgery, Ind.Code § 35–43–5–2 (Burns 1979), and of being an habitual offender, Ind.Code § 35–50–2–8 (Burns Supp.1983), and was sentenced to thirty-five (35) years imprisonment. This direct appeal presents five issues for review, one of which compels us to reverse the judgment of the trial court and to order a new trial.

On February 28, 1981 Robin Rickard was socializing with several friends, including the Defendant, at a bar in Evansville, Indiana. Late in the evening, Ms. Rickard's billfold was discovered by a friend on the floor and was returned to her. Her purse had also been moved from where she had previously placed it on the floor next to her seat. Ms. Rickard later discovered that her driver's license and checkbook were missing from her billfold. Two days later, on March 2nd, a woman identifying herself as Robin Rickard, and possessing a driver's license issued in that name, cashed one of Ms. Rickard's checks at Wesselman's grocery store in Evansville. The woman who presented the check was not Robin Rickard, nor was the handwriting on the check or the signature thereon that of Robin Rickard. Other checks drawn upon the account of Robin Rickard had also been cashed, or an attempt had been made to cash them, at two other area stores on March 1st and 2nd, by a person who generally matched Defendant's appearance, and who possessed a driver's license issued in the name of Robin Rickard.

The clerk who had cashed the check at Wesselman's had also taken a regiscope photograph of the transaction. A regiscope is a camera with two lenses. If working properly, it takes two photographs simultaneously on one strip of film. The negative images, one of the check being negotiated and the other of the person tendering it, are

recorded adjacent to each other, one above the other, on a strip of film upon which other such transactions are also recorded. If desired, positive prints of questioned transactions are made from the film strip.

The Defendant assigns error to the trial court's ruling admitting the regiscope photographs into evidence. She argues that a sufficient foundation had not been laid for its admission, in that there was no evidence that the photograph had been properly developed and printed, or that it had not been altered and that no witness had identified it as depicting the Defendant while she was in the act of cashing the forged check.

Photographs are usually admissible or not, depending upon whether a foundational requirement has been met evidencing that it fairly represents that which it purports to depict. They are not, under such circumstances, however, received as substantive evidence but are merely demonstrative, i.e. visual aids that assist in the presentation and interpretation of testimony. Here, however, it is readily discerned that the photograph was admitted as substantive evidence of the criminal transaction. That is, standing alone, it is evidence of guilt. Such evidence has become acceptable upon a basis that has become known as the "silent witness" theory. Because of the great weight of such evidence, it is obvious that it should be admitted only with great caution.

In *Bergner v. State,* (1979) Ind.App., 397 N.E.2d 1012, Judge Chipman authored an excellent opinion setting forth our rules respecting photographic evidence, as they existed at that time. He adopted the "silent witness" rule in admitting a photograph of the criminal episode of sodomy and held that no witness was required to testify that the photograph was an accurate representation, because it spoke for itself. We quoted extensively and with approval from that opinion in *Torres v. State,* (1982) Ind., 442 N.E.2d 1021, 1024–25.

Because of problems present in the case at bar not present in *Torres,* it is appropriate that we look further to the *Bergner* opinion.

"The foundation requirements for the admission of photographs as substantive evidence under the silent witness theory are obviously vastly different from the foundation required for demonstrative evidence. However, we feel it would be wrong to lay down extensive, absolute foundation requirements. Every photograph, the context in which it was taken, and its use at trial will be different in some respect. We therefore hold only that a *strong* showing of the photograph's competency and authenticity must be established. Whether a sufficiently strong foundation has been laid is left to the sound discretion of the trial court, reviewable only for abuse. However, we stress our use of the adjective 'strong'. Photographs tend to have great probative weight and should not be admitted unless the trial court is convinced of their competency and authenticity to a *relative certainty.*

"Despite our reluctance to formulate absolute standards for the admissibility of photographs as substantive evidence, we feel compelled to require proof the photograph has not been altered in any significant respect. This is necessary to avoid the dangers of misrepresentation or manufactured evidence which are possible through composite or retouched photographs. Additionally, we suggest a few non-mandatory guidelines for the admission of photographs under the silent witness theory. The date the photograph was taken should be established in certain cases, especially where the statute of limitations or the identity and alibi of the defendant are in question. *In cases involving photographs taken by automatic cameras, such as Regiscopes or those found in banks, there should be evidence as to how and when the camera was loaded, how frequently the camera was activated, when the photographs were taken, and the processing and chain of custody of the film after its removal from the camera.*" (Emphasis added) (Citations omitted).

"In adopting the silent witness theory we are cognizant of two problems which

arise when photographs are used as substantive evidence. The first involves the potential for distortive and misrepresentative images present in any photograph. The second concerns the inability to 'cross-examine' a photograph being used as a silent witness.

"Photography is not an exact science. The image a camera produces on film can be affected by a variety of things that may lead to distortion and misrepresentation. The quality of the camera and lens, type of film, available light, focal length of the lens, use of lens filters, or even the perspective from which the photograph is taken can play a part in producing a truly representative photograph. *See* 1 C. Scott, Photographic Evidence, §§ 151–587 (1969). However, assuming any misleading qualities of a photograph are not so egregious as to result in an inadequate foundation, complaints concerning a photograph's distortion go only to the weight to which a photograph is entitled, not admissibility. III Wigmore, Evidence § 792 (Chadbourn rev. 1970); Comment, *Photographic Evidence—Is there a Recognized Basis for Admissibility?* 8 Hast. L.J. 310, 311 (1957). In addition, we note the testimony of an eyewitness is subject to many failings. Essentially, a witness' testimony is based upon what he thinks he remembers he saw. Although the human eye is capable of perceiving many things and the human brain has an unmatched capacity for the retention of information, neither is infallible. A witness' perception of an event may be distorted by his other senses, optical illusions, hallucinations, or other simple perception errors. He is also likely to have forgotten some of what he saw or may have difficulty communicating his recollection in words. *See* 1 C. Scott, Photographic Evidence, §§ 41–54 (1969). On the other hand, a photograph sees in more detail, remembers more accurately and transmits its message more clearly than any human witness. *Id.* Thus, although a witness' testimony and a photograph suffer from some of the same maladies, the photograph is far superior in many respects.

"The second problem posed by our adoption of the silent witness theory concerns the inability to 'cross-examine' the photograph.[4] We first note that before a photograph can be admitted under the silent witness theory a proper foundation must be laid. The opposing party, therefore, is able to extensively cross-examine the witness whose testimony establishes the foundation. Once a foundation is properly established, the photograph gains a certain degree of authenticity and reliability, and we perceive no compelling need for further cross-examination. The situation is analogous to the exceptions to the hearsay rule where the declarant is unavailable. Once 'circumstantial guarantees of trustworthiness' are demonstrated an out-of-court assertion is admissible notwithstanding the inability of the opponent of the evidence to cross-examine the declarant. *Fed.R.Evid.* 804. In light of the ability to cross-examine those witnesses whose testimony establishes the required foundation, and the anthenticity and reliability which attaches to a photograph once a sufficient foundation has been laid, we are unwilling to say the inability to 'cross-examine' a photograph is a sufficient basis for the exclusion of photographs as substantive evidence."

"4. This issue, raised by appellant, appears to present a unique question. Our research has uncovered no other case which has dealt with the 'cross-examination' of a photograph."

*Bergner,* 397 N.E.2d at 1017–18.

Although the photograph admitted portrayed a person whose general description resembled that of the Defendant, it was of very poor quality and identification of the Defendant therefrom would have been difficult. However, Officer Bagbey, who investigated the crime was erroneously permitted to testify, over Defendant's objection, that he was acquainted with the Defendant and that, in his opinion she was the person portrayed in the photograph. It was upon this basis, that the photograph was admitted. Whether or not the photograph was a fair representation was not the point in issue at that time, although that is the test for admitting photographs for demon-

strative purposes. In order for the photograph to qualify for admission as substantive evidence, its probative integrity had to be first established. It should be clear that if a photograph is admissible as substantive evidence because "it speaks for itself," a witness' opinion as to what it is saying not only does not address itself to evidentiary competence but invades the province of the jury.

 The State did not meet the foundational requirement or the guidelines of *Bergner,* as hereinbefore set forth. No evidence was submitted with respect to the processing of the film, and there were missing links in the chain of custody evidence. Therefore, the possibility of significant error or artifice was not eliminated. Whether or not the photograph portrayed the Defendant was a matter of credibility and weight, but before the evidence became competent, it had to be established, *to a relative certainty,* that the person portrayed in the photograph was, indeed, the one who negotiated the check. We are of the opinion that the requirement set forth in *Bergner* that the proponent of the evidence first prove that it has not been altered in any significant respect is sound and was not met in this case. Accordingly, the photograph should not have been admitted.

 Error in the admission of evidence will not be reversible, unless the defendant can demonstrate some significant harm resulting therefrom. *Short v. State,* (1982) Ind., 443 N.E.2d 298, 308; *Williams v. State,* (1981) Ind., 426 N.E.2d 662, 671. We, therefore, look both to the other evidence and to the likely force of the erroneously admitted evidence to determine the potential for harm. The Defendant's burden is not to demonstrate that, but for the error, the verdict would have been different. Rather, harm is shown "when it is made, by all the circumstances, to appear that the error placed him in a position of grave peril to which he should not have been subjected." *White v. State,* (1971) 257 Ind. 64, 77–8, 272 N.E.2d 312, 320.

The circumstantial evidence against Defendant was damning and arguably sufficient, standing alone. It was by no means,

however, overwhelming. The clerk who had accepted the check and taken the regiscope photograph had no independent recollection of her. Neither was she identified as the one who had tendered the other checks drawn upon Robin Rickard's account.

The photographs, admitted without the foundational requirements of *Bergner,* combined with the improperly admitted opinion testimony of Officer Bagby to *cinch* Defendant's conviction. If the jury accepted the authenticity of the photographs and the identification by Officer Bagby the circumstantial evidence was of no significance. We cannot permit a conviction to stand where the relative weight of the properly admitted evidence and the improperly admitted evidence is so disparate.

In view of our decision herein, we do not address other issues presented.

The judgment of the trial court is reversed. The cause is remanded with instructions to grant a new trial.

GIVAN, C.J., and HUNTER and PIVARNIK, JJ., concur.

DeBRULER, J., dissents.