**Daniel RUSSELL, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 1285S500.

Supreme Court of Indiana.

Feb. 24, 1988.

Kenneth T. Roberts, Kenneth T. Roberts & Associates, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Daniel Russell was found guilty by a jury in the Marion County Superior Court, Criminal Division III, of

the crime of Robbery, class B felony, and was further found to be a habitual offender. On July 2, 1985, he was sentenced to a term of fifteen (15) years for the robbery conviction, enhanced by thirty (30) years for the habitual offender finding, for a total term of forty-five (45) years.

Four issues are presented for our review in this direct appeal:

1. admission of evidence taken from Russell at the arrest, and allowance of in court identification of Russell;

2. admission of State's Exhibits 1, 2, 5, 6, 11, 17, 20, 22, and 24;

3. error in permitting the State to read portions of exhibits to the jury; and

4. sufficiency of the evidence.

The facts show that on January 3, 1984, Joseph Lee Euliss was employed at the Village Pantry located at 2040 East Washington Street, Indianapolis, as a clerk, cashier, stocker and cleanup person. He was present at 11:30 p.m., when another clerk, Kathy Bennett, came in to begin her shift. Bennett and Euliss stood at the cash register when a man later identified as Russell approached them, brandished a knife and stated, "This is a stickup." Euliss took money from the cash register drawer, including "bait money," and gave it to the robber. The robber took the money and fled from the store. Bennett immediately telephoned the police.

William T. Oxley was a customer in the Village Pantry at the time of the robbery and observed Russell from a distance of two or three feet. Oxley did not realize a robbery was being committed but he observed the man at the register near him had cuts and bruises on his face. Oxley stated although the man appeared to hold something over his face from Oxley's view, he could see his face and facial features.

The bait money given to the robber consisted of a five ($5) dollar bill and three one ($1) dollar bills, along with a receipt placed on top entitled "Bob's money." Indianapolis Police Detective Gerald Hilligoss had stapled the bait money together and arranged it in the cash register drawer so an alarm was set off when the money was removed. Removal of the bait money acti-vated a concealed camera that was aimed to take pictures of the scene near the cash register. Detective Hilligoss stated he had written a note indicating the denominations of the bait money and the serial number of each bill contained in the bait money packet. The note was placed in the box containing the camera.

Police Officer Stephen Guthier was on patrol duty when he heard a dispatch informing of the Village Pantry robbery. He immediately proceeded to that area. About two blocks east of the Village Pantry, Guthier observed in an alley a person meeting the description of the perpetrator of the Village Pantry robbery. Guthier there arrested Russell and recovered from his person cash, including the bait money missing from the Village Pantry cash register. The slip of paper that had been on top of the bait money in the cash register was also found in the alley at the scene of the arrest. Witnesses from the Village Pantry were brought to the scene of the arrest and identified Russell as the robber.

I

Russell claims all evidence taken from him at the scene of the arrest should have been suppressed by the trial court since Officer Guthier did not have sufficient reason or authority to stop and detain him. He further claims witnesses' in court identification of him as the robber was the result of unnecessary and impermissibly suggestive procedures. We find no merit to either of these contentions.

A police officer may make an initial or investigatory stop of a person or automobile under circumstances where probable cause for arrest is lacking, if facts known to the officer at the time of the stop are such as to warn a man of reasonable caution that an investigation is appropriate. *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889, 905–906; *Earls v. State* (1986), Ind., 489 N.E.2d 516, 519. "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may

be most reasonable in light of the facts known the officer at the time." *Adams v. Williams* (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617. In the instant case, Officer Guthier received a report that a robbery had taken place at the Washington Street Village Pantry. The dispatch included a description of the perpetrator as a white male in a beige hooded jacket, armed with a knife and leaving the scene in an easterly direction. Officer Guthier observed Russell approximately two blocks east of the Village Pantry in an alley and observed he was a white male wearing a beige hooded jacket and that he started running when he saw the police car. The officer persuaded Russell to stop, approached him and immediately was able to determine he had sums of money in his pockets. Upon investigation he recovered sums of money including the bait money he saw protruding from Russell's pocket and found the slip of paper identifying the bait money on the ground. He then placed Russell under arrest. Under these facts and circumstances the trial court properly denied the motion to suppress. *See, Earls,* 489 N.E.2d at 519.

■ After Officer Guthier arrested Russell he caused witnesses from the Village Pantry to come to the scene of the arrest to identify Russell. The witnesses arrived at the alley, two blocks from the Village Pantry, and within ten minutes after the robbery, they identified Russell as the perpetrator. Russell moved to suppress all identification testimony of the witnesses claiming the one-on-one confrontation in the alley was the first identification that planted a tainted seed for further misidentification. He claimed any future identification was so tainted by the first improper identification procedure that it was error for the court to allow such testimony. Russell is correct that identification procedures so suggestive as to give rise to the substantial likelihood of misidentification violate the defendant's due process rights. *Glover v. State* (1982), Ind., 441 N.E.2d 1360, 1363. However, showup identifications are not *per se* impermissible if held immediately after the crime for they allow the witnesses to view the suspect while the image of the perpetrator is still fresh in their minds. *Townsend v. State* (1984), Ind., 460 N.E.2d 139, 141; *Whitlock v. State* (1981), Ind., 426 N.E.2d 1292, 1293–1294. The witnesses identifying Russell at trial testified they were able to observe him in a well lighted room for a sufficient length of time to identify him as the same person who committed the robbery. Under the facts and circumstances here, we find the trial court did not err in allowing the in court identification.

## II

Russell claims the court erred in admitting into evidence State's exhibits 1, 2, 5, 6, 11, 17, 20, 22, and 24, claiming they were admitted either without a proper foundation or a proper chain of custody.

■ Objections to State's exhibits 22 and 24 were based on the fact they duplicated evidence demonstrated in State's exhibits 21 and 23. These exhibits were admitted during the habitual offender phase of the trial. Some of the exhibits were certified copies of court records demonstrating Russell's convictions for prior unrelated crimes and others were records from the Westville Correctional Center demonstrating a commitment for the same charges. Russell's claim is the State overwhelmed the jury with duplicative and cumulative evidence of the same crimes. He does not claim nor does he show that any of these records were not properly certified. The exhibits were in proper form to be used to prove a defendant's habitual offender status. *Smith v. State* (1985), Ind., 475 N.E.2d 1139, 1142; *Harmer v. State* (1983), Ind., 455 N.E.2d 1139, 1141. The fact that items of evidence are cumulative does not merit reversal of the trial court unless there is a showing of an abuse of discretion. *Davis v. State* (1983), Ind., 456 N.E.2d 405, 409. Considering the nature of the determination before the jury in the habitual offender proceeding we fail to see an abuse of discretion by the trial court or fundamental prejudice to Russell in the admission of all these exhibits. *Baker v. Duckworth* (7th Cir.1985), 752 F.2d 302,

*cert. denied* 472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618; *Collins v. State* (1981), 275 Ind. 86, 94–95, 415 N.E.2d 46, 53, *cert. denied* 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851.

Russell claims the State failed to prove proper chain of custody for State's exhibits 11, 17, and 20. However, Russell's complaint goes more to identification than it does chain of custody. Chain of custody refers to the preservation of an item of evidence after it is taken into police custody to support the fact the item being offered is the same one taken into custody. Russell complains of these three exhibits with regard to their handling prior to the commission of the crime, putting into question their identity by Detective Hilligoss. State's Exhibit 11, the piece of paper on which Detective Hilligoss had written the bait money serial numbers and denominations, was secreted in the box containing the concealed camera and recovered by Detective Hilligoss from the camera box after the robbery. State's exhibit 20 was the piece of paper which was stapled to the top of the bait money in the cash register identifying the bills as "Bob's money." Exhibit 17 was a photograph of that slip of paper lying in the alley where Russell was apprehended. Detective Hilligoss identified each of these exhibits. If an item possesses characteristics which are thoroughly unique and relatively impervious to change the trial court has broad discretion to admit this exhibit merely based upon testimony that the item is the one in question and is in a substantially unchanged condition. *Dier v. State* (1982), Ind., 442 N.E.2d 1043, 1046. Detective Hilligoss' testimony supplied this information and the court properly admitted the exhibits.

State's exhibit 1 was a series of photographs taken by the automatic camera activated by the removal of the bait money in the cash register. Exhibit 2 was a blowup of one of those photographs. Russell claims there was insufficient foundation for the admission of exhibits 1 and 2. Detective Hilligoss testified he loaded the camera at the Village Pantry with film. After the robbery he took the film to a processing lab and picked up the film from the lab after it was processed. Russell's complaint is that there was no testimony from those who processed the film to assure the photographs were not tampered with or changed in any way and that Detective Hilligoss was permitted to testify about the exhibits before they were admitted into evidence. The court permitted Hilligoss to testify about the exhibits in order to properly identify them for admission. This was proper. Furthermore, Detective Hilligoss' testimony tended to show the photographs of the scene demonstrated by exhibits 1 and 2 was the area of the cash register in the store where the camera was trained and showed the persons involved in this incident. Witness Oxley identified himself, the other witnesses and Russell in State's exhibit 2 as being the scene depicted while the robbery was being committed. This testimony sufficiently identified the photographs in exhibits 1 and 2 for their admission. *Smith v. State* (1986), Ind., 491 N.E.2d 193, 195–196; *Groves v. State* (1983), Ind., 456 N.E.2d 720, 721–723.

State's exhibits 5 and 6 are photographs of Russell during the robbery. Photographs are admissible if established to be true and accurate representations of things they are intended to portray. *Goodloe v. State* (1982), Ind., 442 N.E.2d 346, 347. Russell's objection to State's exhibit 5 is that witness Oxley made two contradictory statements about the accurate representation of exhibit 5 and such inconsistency failed to establish a proper foundation. The equivocation of Oxley, however, went to the weight of his testimony and not its admissibility. Oxley apparently became confused during the interrogation and at one time said exhibit 5 demonstrated the robber of the Village Pantry and when asked if exhibit 5 was a true and accurate representation of the way the robber looked on the evening of January 3, 1984, he answered he could not remember. After further questioning, however, he stated exhibit 5 was an accurate representation of the way the robber looked. Oxley also testified exhibit 6 depicted the man who robbed the Village Pantry. Russell claims there is nothing in the record to indicate who was pictured in exhibit 6. Again, this

goes to the weight of the exhibit and not its admissibility. It was proper for the witness to testify that the scene depicted the person who robbed the store. There was other evidence offered by the State identifying Russell as the perpetrator of that robbery. Exhibits 5 and 6 were properly admitted into evidence.

### III

■ During the habitual offender phase of the trial, the prosecutor read the documents evidencing Russell's prior unrelated convictions to the jury, omitting the formal parts. Russell's only objection during the reading of these exhibits was that they were duplicative, which objection was overruled. After the State had completed reading from all of the documents, Russell objected to the prosecutor's procedure in not reading the entire documents to the jury. The court offered Russell an opportunity to have the documents re-read in their entirety but Russell declined. Rather, Russell agreed to the court allowing the jury as a group and individually to take as much time as each of them desired to read the documents in their entireties within the evidentiary phase of the habitual offender proceeding. This procedure cured any error with regard to the partial reading of the documents to the jury. *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, 1159, *cert. denied* 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851.

### IV

■ Finally, Appellant claims there was insufficient evidence to sustain the verdicts of the jury. The facts as we have outlined them here demonstrate there was sufficient probative evidence before the jury to support its conclusion that Russell is guilty beyond a reasonable doubt. *Rhoton v. State* (1985), Ind., 486 N.E.2d 495, 496; *Gatewood v. State* (1982), Ind., 430 N.E.2d 781, 782–785.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.