**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Brett STORMER, Defendant–Appellant.**

**No. 90–3711.**

United States Court of Appeals, Seventh Circuit.

Argued June 19, 1991.

Decided July 29, 1991.

---

Andrew B. Baker, Jr., Asst. U.S. Atty., Office of the U.S. Atty., Dyer, Ind. and Terry Boesch, Law Student, for plaintiff-appellee.

Joseph S. Irak, Merrillville, Ind., for defendant-appellant.

Before CUMMINGS, POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Defendant–Appellant, Brett Stormer, was convicted following a jury trial on one count of bank robbery in violation of 18 U.S.C. §§ 2113(a) & (d) and one count of carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1). Stormer was sentenced to fifty-one months imprisonment on Count I and sixty months on Count II to be served consecutively, to be followed by five years of supervised release during which time he was ordered to pay restitution in the amount of $8,580.95. Stormer filed this appeal challenging the admission of testimony from four police officers identifying Stormer as the robber in the bank surveillance photographs.

## I. Background

On May 15, 1990, a branch of the First Federal Savings and Loan Association located at 3710 S. Franklin Street in Michigan City, Indiana insured with the F.D.I.C. was robbed of $9,580.95 in currency and bait money.

The Michigan City Police Department (MCPD) responded to a telephone call reporting the robbery and to an alarm triggered by a teller, who also activated two surveillance cameras located in the bank. The robber was described as a white male approximately twenty-six years old, between 5' 10" and 5' 11" tall with a muscular build, light brown hair, and thin mustache. He was described as wearing blue jeans, a black jacket, white tennis shoes, a baseball cap, and light colored hosiery over his face. The robber was carrying a semi-automatic weapon, which he pointed at the two tellers whom he ordered to put the contents of their cash drawers in the blue duffel bag that he was carrying.

Shortly after the robbery, the film from the surveillance cameras was removed and sent to a laboratory to be developed. Stormer was identified as the robber in the photographs. A warrant was issued for his arrest and he was apprehended in Tampa, Florida on May 21, 1990. A search of Stormer's room incident to his arrest revealed a black jacket, a shirt, and a blue duffel bag similar to the ones depicted in the surveillance photographs.

Stormer entered a plea of not guilty to the charges and his trial commenced September 4, 1990. On the first day of trial, Stormer made an oral motion in limine, seeking to prevent the four police officers scheduled to testify for the government from giving opinion testimony as to the identity of the robber in the surveillance photographs. Stormer alleged that the probative value of the testimony was outweighed by its prejudicial effect in that Stormer would be precluded from engaging in extensive cross-examination of the police officers due to the circumstances surrounding his resignation from the police force. Stormer, formerly an officer with the MCPD, resigned in 1988 after being given the choice of resigning or facing a full investigation into allegations that he had been committing burglaries while on midnight patrol. Stormer maintains that he was not able to effectively cross-examine the police officer witnesses to expose their bias because to do so would have had the disastrous effect of revealing the allegations of improprieties leveled against him while he was a police officer.

The court withheld final ruling on the motion and permitted Stormer to question the police officers out of the presence of the jury to afford Stormer the opportunity to establish bias. After the voir dire of the officers was completed, Stormer renewed his motion in limine and the trial court denied the motion. At trial, the judge gave a preliminary instruction and a limiting instruction to the jury regarding the weight to be given the opinion testimony of the police officers. The trial court also ordered

that the government could not disclose to the jury the occupation of the two police officers who were not involved in the investigation. In addition, the court directed that no reference be made to the allegations of improprieties associated with Stormer during his tenure with the police department or the circumstances surrounding his resignation.

At trial, the defendant Stormer was identified as the person depicted in the surveillance photographs by the two tellers who were the victims of the robbery. Stormer was also identified as the person depicted in the photographs by seven other witnesses, three friends and the four police officer identifications at issue in this appeal. The jury found Stormer guilty on each count of the indictment. Stormer was sentence to fifty-one months on Count I to run consecutively to the sixty-month sentence on Count II. He was also ordered to serve five years of supervised release following his imprisonment and further ordered to pay $8,580.95 in restitution during the period of supervised release. This appeal followed.

## II. Analysis

Stormer raises one issue on appeal. He challenges the district court's denial of his motion in limine seeking to prohibit the police officers from giving opinion testimony as to the identity of the robber in the bank surveillance photographs. Stormer's challenge to the lay opinion testimony of the police officers is two-fold. Initially, he maintains that the district judge abused his discretion in admitting the testimony pursuant to Rule 701 of the Federal Rules of Evidence. Secondly, Stormer argues that even if the police officer's testimony was admissible under Rule 701, it should have been excluded under Rule 403 of the Federal Rules of Evidence because the probative value of the testimony was outweighed by its prejudicial effect.

A. *Admissibility of the Opinion Testimony Under Rule 701*

Rule 701 of the Federal·Rules of Evidence provides:

"If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

In *United States v. Towns,* 913 F.2d 434 (7th Cir.1990), this court noted that the "decision [of] whether to admit testimony under Rule 701 is 'committed to the sound discretion of the district court and a ruling will not be reversed absent a finding that the trial court abused its discretion.'" *Id.* at 445 (quoting *Kelsay v. Consolidated Rail Corp.,* 749 F.2d 437, 448 (7th Cir. 1984)). The *Towns* court also stated that as a general rule "a lay witness may testify regarding the identity of a person depicted in a surveillance photograph 'if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury.'" *Id.* (quoting *United States v. Farnsworth,* 729 F.2d 1158, 1160 (8th Cir. 1984)).

Stormer argues that the lay opinion testimony is inadmissible because he did not significantly alter his appearance between the time of the crime and the time of trial and because he did not wear any substantial feature-altering clothing or a disguise. In both *Towns* and *United States v. Jackson,* 688 F.2d 1121 (7th Cir.1982), this court addressed and rejected a similar argument. In *Jackson,* the district court permitted a witness who had met the defendant on only one prior occasion to identify the defendant as the person depicted in the surveillance photograph. The court noted that despite the absence of independent evidence that the defendant had changed his appearance, the testimony of the lay witness identifying the defendant as the robber was admissible because it was *"helpful* to a clear understanding of ... the determination of a fact in issue." *Jackson,* 688 F.2d at 1126 (emphasis in original), *cited with approval in Towns,* 913 F.2d at 445. Similarly, in *Towns* this court found no abuse of discretion in the admission of opinion testimony of the de-

fendant's girlfriend that he was the robber in the bank surveillance photograph. The defendant in *Towns* had a mustache at the time of the robbery which he shaved off prior to trial. In addition, he wore a stocking cap, sunglasses, and a sweatshirt that had the potential to make him appear heavier than he was. The *Towns* court concluded that in light of that evidence the case presented a "more compelling use of lay witness identification testimony" than did *Jackson.* 913 F.2d at 445.

In *Jackson,* this court stated that a lack of evidence of a change in appearance is not necessarily fatal to the admission of lay opinion identification testimony. *Id.* at 1125. *Accord United States v. Allen,* 787 F.2d 933, 936 (4th Cir.1986) ("[W]e see no reason to make evidence of changed appearance a prerequisite to the use of identification testimony."). However, this case does not approximate a *Jackson* or *Allen* situation where there is no evidence of alteration of the robber's appearance. Contrary to Stormer's assertions, there is evidence in the record that he took measures to change his appearance during the robbery with the apparent motive of avoiding identification. Stormer wore a baseball cap which had the potential for obstructing a witness' view of his face and he had hosiery pulled over his face. There can seemingly be no other explanation for a robber pulling hosiery over his face than his desire to alter his appearance so as to avoid being identified. In fact, on cross-examination of the identification witnesses at trial, Stormer's attorney unsuccessfully attempted to discredit the witness' identification of Stormer as the robber by asking questions that emphasized the distorting effect of the hosiery. As such, Stormer has implicitly acknowledged the fatal flaw in his argument that opinion testimony was not helpful to the jury because he "was not wearing any substantial feature-altering clothes or a disguise."

Because the police officers who identified Stormer had worked with him for several years and were familiar with his appearance, they were in a better position to properly identify Stormer as the robber than was the jury, especially in light of the fact that poor picture quality of the surveillance photographs in conjunction with Stormer's efforts to alter his appearance served to hinder the jury in making the crucial decision of whether Stormer was the man depicted in the surveillance photographs. *See Allen,* 787 F.2d at 936 (Identification testimony of witnesses who were familiar with the defendant because of their interaction with him in a natural setting was particularly helpful where the photographs used for identification were less than clear.). Under these circumstances, we are of the opinion that the district court properly concluded that the identification testimony of the officers would be helpful to the jury in making the determination of whether Stormer was the person depicted in the surveillance photographs. Therefore, the trial judge acted within his discretion in admitting the testimony under Rule 701.

### B. *Exclusion of the Testimony Under Rule 403*

Stormer also argues that even if the officer's testimony was admissible under Rule 701, the trial court abused its discretion in admitting the testimony because the probative value of the evidence was outweighed by its prejudicial effect. He relies on the case of *United States v. Calhoun,* 544 F.2d 291 (6th Cir.1976) as the principal support for his argument. In *Calhoun,* the court found that the district court abused its discretion in permitting the defendant's parole officer to identify the defendant as the person depicted in the bank surveillance photograph of a robbery. The *Calhoun* court emphasized that the main defect in permitting such testimony is the fact that "[the witness'] broad assertion could not be tempered or probed by cross-examination." 544 F.2d at 295. That is, as the Sixth Circuit explained in *United States v. Monsour,* 893 F.2d 126 (6th Cir. 1990), the holding of *Calhoun* is "grounded ... on the fact that the defendant could not effectively cross-examine the parole officer without revealing their relationship and the defendant's prior criminal record." *Id.* at 128. In this instance, Stormer maintains

that he was likewise constrained in his cross-examination of the police officers, because extensive cross-examination and a detailed exploration of the bias of the officers came at the risk of exposing the rumors of alleged improprieties while he was a police officer and the circumstances of his resignation from the force.

In *United States v. Allen,* 787 F.2d 933 (4th Cir.1986), the court rejected *Calhoun* and declined to follow its *per se* abuse of discretion rule where the district court permits a parole officer or a policeman to give lay opinion identification testimony because of the constraints placed upon cross-examination. *Id.* at 938. The *Allen* court noted that the "limitation of cross-examination [in this case] was ... the result of a tactical choice by the defendants similar to those frequently faced at trial. Nothing in the Rules of Evidence or any other source is intended to relieve criminal defendants from difficult strategic decisions.... Defendants chose to limit cross-examination, and we see no reason to insulate them from the natural consequences of that choice." 787 F.2d at 937.

Although the *Allen* court rejected the rationale of *Calhoun,* the court did caution that the district court should employ procedures to "give a defendant the information necessary to make an informed decision as to the scope of cross-examination." *Id.* at 937–38. The court then approved the procedure used by the district court in that case, where the defendant was permitted to object and the foundation for the testimony was established outside the presence of the jury, permitting the trial court to fully balance probity against prejudice in making the decision of whether or not to admit the testimony. In addition, the defendant was permitted to fully cross-examine the witness with the jury absent. Finally, the prosecution was instructed not to reveal the occupation of the witness. The *Allen* court concluded that the use of this procedure left the decision of whether to discuss the prejudicial information entirely with the defense and thus ensured that the testimony did not unfairly prejudice the defendant.

Similarly, in *United States v. Farnsworth,* 729 F.2d 1158 (8th Cir.1984), the court rejected the argument that the restraints on cross-examination where a parole officer identifies the defendant in a bank surveillance photograph are "so extreme that the admission of ... [the] identification is *per se* an abuse of discretion." *Id.* at 1161. Instead, the court followed its earlier decision in *United States v. Sostarich,* 684 F.2d 606 (8th Cir.1982), which endorsed a procedure for admitting the testimony of a parole officer if the government could establish the witness' relationship with the defendant without establishing the fact of earlier incarceration. The *Farnsworth* court noted that the district court complied with the requirements of *Sostarich* by ordering the government not to ask questions about circumstances of the witness' relationship with the defendant. As such, the decision to limit cross-examination was left in the discretion of defense counsel and the court found no abuse of discretion in the admission of the testimony.

Turning to the facts of this case, we find that the trial court acted within its discretion in admitting the identification testimony of the police officers. The district court permitted Stormer to conduct an extensive examination of each of the police officers outside the presence of the jury before ruling on the motion in limine. During that examination, Stormer was afforded an opportunity to explore the foundation of the testimony and the bias or prejudice of each witness. Each officer testified that he or she had regular contact with Stormer during his tenure on the police force and that they were familiar with his appearance. In addition, each officer testified that the allegations against Stormer had not prejudiced them against him and that their identification was in no way influenced by the circumstances of his resignation.

Thus, outside of the presence of the jury, the trial judge heard testimony establishing the foundation for the identification testimony. The trial judge was also presented with evidence that permitted him to assess the bias and prejudice of the witnesses.

Finally, this examination afforded the trial judge the opportunity to balance the probative value of the identification testimony against the danger of prejudice to the defendant before making his ruling on the admissibility of the testimony. It should be noted that in an attempt to minimize the risk that evidence of the allegations surrounding Stormer's departure from the force would be put before the jury, the district court took the additional precautions of ordering the government not to disclose the occupation of the two officers who did not participate in the robbery investigation and of giving a preliminary instruction regarding the weight to be given lay opinion testimony before it was heard, which instruction was repeated in the final charge to the jury. In light of the extensive precautionary procedures that the district court used in this instance to minimize the potential for prejudice to the defendant, we find no abuse of discretion in admitting the testimony. AFFIRMED.