**David W. GIBSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 27A02–9802–CR–162.

Court of Appeals of Indiana.

April 12, 1999.

Transfer Denied June 17, 1999.

Eugene C. Hollander, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Chris Worden, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge

### STATEMENT OF THE CASE

Defendant–Appellant David W. Gibson ("Gibson") was tried by jury and appeals his conviction of robbery while armed with a deadly weapon, a Class B felony. Ind.Code § 35–42–5–1(2).

We affirm.

### ISSUE

Gibson raises the following restated issue: whether he received ineffective assistance of trial counsel because his counsel failed to object to certain identification testimony and failed to object to references to Gibson's prior criminal record.

### FACTS AND PROCEDURAL HISTORY

The facts most favorable to the verdict reveal that on March 31, 1997, Benjamin Williams of the Marion Police Department was working security at the Marion Public Library when he saw Gibson, a black male, heading south through the library parking lot at 9:00 p.m. Williams was walking outside with members of the library staff at closing time when he observed Gibson, who was wearing a red jacket, pass within five feet of Williams.

At approximately 9:00 p.m. a black male entered the Handy Andy convenience mart, which was located south of the Marion Public Library. As the black male paid for his soda, Scott Hargrave, the clerk, asked the man if he wanting anything else. The man replied that he wanted the money in the register. Hargrave asked the man if he was joking, and the man showed him a foot-long knife. The man, who was wearing a gray sweatshirt with a hood and a red jacket over it, repeated his demand for the money in the register. Because of the way the man was wearing his sweatshirt hood, Hargrave could not see the man's hair or ears. However, Hargrave could see that the man had a mustache and a patch of hair on his chin. After some difficulty, Hargrave opened the register and gave the man some money from the register. The man left the convenience mart and Hargrave made a 911 call to report the robbery.

John Shepard and his girlfriend, Kathy Brooks, were in their car in the parking lot of the Handy Andy at the time of the robbery. Shepard, who had served time in jail with Gibson, saw Gibson leave the store.

Shepard went into the store and was told by Hargrave that Hargrave had just been robbed.

The Handy Andy convenience mart had a surveillance camera in the store. Chester Lee Johnson, an investigator with the Marion Police Department, along with several other detectives, watched the videotape of the robbery. Johnson, who was a friend of Gibson's older brother, knew Gibson since they were in middle school and had seen Gibson a few times since then. Johnson was positive that the individual on the videotape was Gibson. He based that opinion on his familiarity with Gibson's build, style of speech, voice and bow-legged manner of walking.

Hargrave viewed both a photo array and lineup. Hargrave selected Gibson as the person who looked like the man who robbed the store. Hargrave indicated that he could not be absolutely certain of the identification because he had not seen the robber's ears or hair. However, Hargrave indicated that nothing about Gibson's appearance ruled him out as the robber.

At trial Gibson presented the testimony of Anthony Dewayne Smith to support his alibi defense. Smith testified that Gibson was at Smith's apartment watching the final game of the NCAA basketball tournament at the time of the robbery.

## DISCUSSION AND DECISION

### I. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Claims involving an allegation of the denial of the Sixth Amendment right to effective assistance of counsel are evaluated by using the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Rouster v. State*, 705 N.E.2d 999, 1003 (Ind.1999). An appellant must show both deficient performance and resulting prejudice in order to prevail on an ineffective assistance of counsel claim. *Id.* A deficient performance is a per-

formance that falls below an objective standard of reasonableness. *Id.* Prejudice exists when a defendant shows there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

Even if the defendant succeeds in showing a reasonable probability the results would have been different, he also must show that his conviction was fundamentally unfair or unreliable. *See Williams v. State*, 706 N.E.2d 149, 154 (Ind.1999). A fair trial has been denied a defendant when his conviction or sentence has resulted from a breakdown in the adversarial process which rendered the result unreliable. *Id.*

There is a strong presumption that counsel rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment, and the burden falls on the appellant to overcome that presumption. *Sada v. State*, 706 N.E.2d 192, 198 (Ind.Ct.App.1999). Isolated poor strategy, bad tactics, a mistake, carelessness or inexperience do not necessarily amount to ineffective counsel unless, taken as a whole, the defense was inadequate. *Id.* at 199.

### A. IDENTIFICATION TESTIMONY

Gibson contends that his trial counsel was ineffective because he did not object to the identification testimony of Investigator Johnson. Prior to trial Gibson's attorney filed a motion in limine seeking to prevent the testimony of police officers who had viewed the videotape of the suspect and who believed that Gibson was the person who robbed Handy Andy's.

Gibson's attorney had argued in his motion that once the videotape was admitted, it became substantive evidence, a silent witness, and that a police officer's testimony concerning what was depicted in the videotape would be inappropriate. He cited to *Groves v. State*, 456 N.E.2d 720 (Ind.1983) in support of that argument.[1] Gibson argued that the

---

1. In *Groves*, a case decided prior to the adoption of the Indiana Rules of Evidence, the issue was whether a sufficient chain of custody was presented prior to admitting a photograph of a criminal transaction. The supreme court decided that the chain of custody establishing the authenticity of the photograph was not sufficient. The court further stated that an officer who was familiar with the defendant in that case erroneously was permitted to testify that it was the

jury should decide if the person depicted in the videotape and Gibson were the same person. The State argued that under Ind.Evidence Rule 701 the officer's testimony was permissible as opinion testimony by a lay witness. The trial court denied Gibson's motion in limine. Gibson's attorney did not object at trial when the police officer's identification testimony was presented.

On appeal, Gibson argues that had his attorney objected to the identification testimony of Investigator Johnson, the testimony would have been suppressed. Gibson argues that under the silent witness theory it was inappropriate to allow Johnson's testimony, and that his attorney's failure to object to that testimony amounts to the ineffective assistance of trial counsel.

Evid. R. 701 provides as follows:

If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Our supreme court addressed the admissibility of opinion testimony of lay witnesses in *Weaver v. State*, 643 N.E.2d 342, 345 (Ind. 1994). The underlying events which took place in *Weaver* occurred prior to the adoption of the Indiana Rules of Evidence in 1994. However, the supreme court discussed Evid. R. 701, since their review of the case occurred after the adoption of the rules, and concluded that the same result would obtain under the new rules of evidence. *Id.*

In *Weaver*, the supreme court upheld the trial court's decision to prevent the victim's lay opinion testimony as to the defendant's motivation for attempting to murder, confine and batter her. The defendant had raised a voluntary intoxication defense to negate his ability to form intent to commit the crimes. The defense sought to introduce the victim's opinion about whether the defendant intended to kill her. The trial court excluded that

defendant who was depicted in the photograph because the chain of custody was inadequate.

opinion testimony, but allowed the victim to testify about what happened and let the jury draw its own conclusions. The supreme court agreed with the trial court's decision. *Weaver*, 643 N.E.2d at 345. The court held that the testimony was not objectionable merely because intent was an ultimate issue to be decided by the trier of fact, but because opinion testimony concerning intent or legal conclusions is not admissible. *See* Evid. R. 704(a) & (b).

In *Kent v. State*, 675 N.E.2d 332 (Ind. 1996), the defendant was convicted of the murder of a child. The child's mother, who had left the child in the care of the defendant, called for help when she discovered after returning home that her child was not breathing. An officer who arrived at the scene in response to the call for help observed the defendant roughly thrusting on the child's abdomen. The defense attempted to elicit testimony from the officer that the defendant's actions were efforts to revive the child. The prosecution elicited opinion testimony from the officer that the defendant's actions were consistent with inflicting harm to the child. The officer further testified that in his opinion the child's injuries were not sustained as the result of an accident as the defense had proposed.

The supreme court, in affirming the conviction, held that the trial court properly allowed the officer's testimony under Evid. R. 701. *Id.* at 339. The officer could testify about his opinion based on his own observations. *Id.* The conclusions he reached, though not expert, helped to explain his own testimony. *Id.*

■ We held, in *Mariscal v. State*, 687 N.E.2d 378, 380 (Ind.Ct.App.1997), that an opinion under Evid. R. 701 is rationally based, for purposes of the rule, if it is one that a reasonable person normally could form from the perceived facts. An opinion is helpful, for purposes of the rule, if the testimony gives substance to facts which were difficult to articulate. *Id.*

This case is not applicable to the case at bar.

In *Mariscal,* an eyewitness to a stabbing was allowed to testify under Evid. R. 701 about injuries he believed the defendant inflicted upon himself during an altercation. The eyewitness was a security guard, reserve police officer, part-owner of a martial arts business, and teacher of combative arts. He also had refereed several combat tournaments. The eyewitness was allowed, based upon his own observations, to explain his testimony that some of the stabbing motions missed their mark, and to give his opinion that the motions must have resulted in injuries to the defendant.

While these cases have addressed the admissibility of opinion testimony of lay witnesses under Evid. R. 701, who also were eyewitnesses to the crimes charged, none of those cases addressed the issue of allowing lay opinion testimony by a person who is not an eyewitness to the crimes charged concerning the identity of a person who is depicted in a surveillance videotape. In other cases we have looked to the Seventh Circuit for guidance when the text of the state rule of evidence is identical to its federal counterpart. *See Pirnat v. State,* 612 N.E.2d 153, 155 (Ind.Ct.App.1993). The Seventh Circuit has interpreted Fed.R.Evid. 701 to permit a witness to offer an opinion on the identity of an individual in a surveillance video or a photograph, as long as there is a basis for finding that the witness has superior ability to identify the defendant than the jury. *U.S. v. Stormer,* 938 F.2d 759, 762 (7th Cir.1991).

In *Stormer,* the Seventh Circuit upheld a district court's decision to allow police officers to testify under Fed.R.Evid. 701 regarding their opinion of the identity of a person depicted in a surveillance videotape. The Seventh Circuit stated that the decision about whether to admit testimony under Fed.R.Evid. 701 is left to the sound discretion of the district court, whose decision will not be reversed except upon a showing of an abuse of that discretion. 938 F.2d at 761. The Seventh Circuit noted that a lay witness may testify regarding his or her opinion of the identity of a person depicted in a surveillance photograph if there is some basis for concluding that the witness is more likely to identify the defendant correctly from the

photograph than the jury. *Id.* The identification testimony was admissible because it was helpful to a clear understanding of the determination of a fact at issue. *Id.* Because the officers, in *Stormer,* were familiar with the defendant and his appearance, they were in a better position to identify the person on the surveillance videotape than the jury, especially since the quality of the photographs was poor and the defendant had attempted to alter his appearance. *Id.* at 762.

In *United States v. Jackson,* 688 F.2d 1121, 1125 (1982), the Seventh Circuit upheld a district court's decision to allow a lay witness to testify about her opinion of the identity of a robber depicted in bank surveillance photographs. That witness had seen the defendant, whom she identified as the person in the photographs, only once at an office Christmas party. The Seventh Circuit stated that the lay witness's testimony helped the jury because she could compare the identity of the person in the photographs with everyone she had met, whereas the jury was limited to comparing the person in the photographs with the defendant. *Id.*

■ In the present case, identification of the robber was at issue. Moreover, the robbery victim was able to identify Gibson as looking like the robber, even though he was unable to do so with absolute certainty because of the way the robber pulled the hood of a sweatshirt over his head. The trial court was correct in determining that the lay opinion testimony of Investigator Johnson would be helpful to the jury. The trial court did not abuse its discretion.

Ironically, Gibson argues that we should view the surveillance videotape ourselves because it would be apparent that identification of the robber from that videotape is not possible. While we decline the invitation to view the videotape, we note that Gibson's argument supports the trial court's determination that testimony which would aid the jury in reaching a decision about identification, which was at issue, was correct.

Because we find that the trial court did not abuse its discretion in allowing the identification testimony under Evid.R. 701, we also find that Gibson's trial counsel was not inef-

fective by failing to object to the identification testimony at trial.

## B. PRIOR CRIMINAL RECORD

Gibson argues that he received ineffective assistance of trial counsel because his attorney failed to object to references made at trial to his prior criminal history. Gibson contends that his attorney should have objected to Officer Williams' testimony that he was familiar with Gibson and knew what he looked like because of a previous arrest. Gibson also contends that his attorney should have objected to another police officer displaying a photo line-up which included a photograph of Gibson at the jail wearing jail clothes.[2] Gibson claims that he was prejudiced by his attorney's failure to object to this evidence.

 Gibson's attorney decided to call Gibson as a witness at trial. The State contends that Gibson's attorney was not ineffective for failing to object to prior criminal history evidence because under Ind. Evidence Rule 609, Gibson's two theft convictions were available for impeachment purposes as crimes involving dishonesty or false statement. *See Fassoth v. State*, 525 N.E.2d 318, 322 (Ind.1988).

Officer Williams' testimony was that he had booked Gibson before. Officer Williams made *no reference to the crime committed* which led to Gibson being booked by Williams. The State elicited the same information from Gibson during cross-examination of Gibson.

Gibson's counsel also attempted to present a mistaken identity defense. Part of that defense depended upon referring to Gibson's prior criminal record. Kathy Brooks testified for the defense that John Shepard told her that the person she saw coming out of Handy Andy's was the same person she had spoken with at a Christmas holiday food handout at the local coliseum. She testified that the people handing out the food were inmates.

In his opening statement Gibson's attorney stated that Brooks remembered speaking to the person she now believed was the robber at the food giveaway she attended, but that records of which inmates worked as part of the crew handing out the food indicated that while Gibson was a member of the work crew, he did not work as part of the crew giving away food at the coliseum on that occasion.

The supreme court has held that on appeal we may not second-guess strategic decisions requiring reasonable professional judgment even if the strategy or tactic, in hindsight, did not best serve the defendant's interests. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997). In the present case, counsel decided to call Gibson, who did have a prior criminal record, as a witness in his own defense. Brooks, another defense witness testified that she thought the robber was a former inmate she had spoken to at a food giveaway. The theory of the defense was that Gibson was somewhere else at the time of the robbery, and that he was identified by Shepard mistakenly.

In light of the fact that Gibson's attorney attempted to use his criminal history to Gibson's advantage, we cannot say that Gibson's attorney's failure to object to other references made to Gibson's prior criminal history constituted ineffective assistance of counsel.

## CONCLUSION

Gibson has failed to show that his trial counsel's performance fell below an objective standard of reasonableness. Moreover, Gibson has failed to show that there is a reasonable probability that, but for his counsel's alleged unprofessional errors the result of the proceeding would have been different. Further, Gibson has failed to show that his conviction was fundamentally unfair or unreliable.

Judgment affirmed.

MATTINGLY, J., and NAJAM, J., concur.

---

**2.** All of the pictures included in the array were photographs taken at the jail of black males who were wearing jail clothes.