**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**VICKIE YASER**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN D. MAY, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 28A05-1307-PC-320 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE GREENE CIRCUIT COURT
The Honorable Erik C. Allen, Judge
Cause No. 28C01-1201-PC-1

**December 27, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

John D. May was convicted of possession of methamphetamine while in possession of a firearm, a Class C felony, following a jury trial. On direct appeal, this court affirmed his conviction. See May v. State, No. 28A01-0409-CR-397 (Ind. Ct. App. February 28, 2005) ("May I"). May subsequently petitioned for post-conviction relief, which the post-conviction court denied. He now appeals, challenging the post-conviction court's judgment, and he raises a single issue for our review, namely, whether he was denied the effective assistance of trial counsel.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In May I, we set out the facts and procedural history as follows:

The facts most favorable to the judgment demonstrate that on May 12, 2003, Amy Honchell, Justin May (Justin), and John D. May (May) were at the home of Justin and May's grandmother, Donna May (Donna). Justin and May were brothers and had been raised by Donna since they were infants. Honchell was Justin's girlfriend.

Gerald Ray (Gerald), Donna's son and Justin and May's uncle, was also at Donna's house on May 12th. An argument ensued between Gerald and May wherein Gerald told May to stop threatening Donna and to remove May's methamphetamine lab from Donna's house. During the argument, Justin hit Gerald with a guitar and May beat Gerald with a shotgun. Gerald eventually escaped to a neighbor's house and the neighbor called the police. When Gerald returned to Donna's house, May, Justin, and Honchell were gone.

When Gerald and his nephews began arguing, Honchell left the house and waited in her car. Justin and May eventually came out of the house and Honchell saw May carrying a gun and a brown bag. Justin requested the car keys from Honchell, Honchell gave the keys to Justin, May placed the bag in the trunk, and then May got into the back seat with the gun. Honchell drove the group to a friend's house in Coalmont,

Indiana. At the time, May informed Honchell he did not want the bag at his grandmother's house because he thought Gerald would call the cops on him. After spending a few hours in Coalmont, Honchell drove May and Justin back to her apartment.

While Honchell, Justin, and May were driving to Coalmont, the police were arriving at Donna's house in response to the neighbor's phone call. Donna requested that the police search her home because she believed Justin and May might be keeping drugs at her house. Police searched the premises and located equipment to manufacture methamphetamine and a recipe for its manufacture in May's bedroom.

As police were investigating the battery case, Honchell, Justin, and May decided to drive uptown, and in doing so drove by Donna's house. Upon identification of Honchell's car, Officer Paul Clark initiated a traffic stop and searched the car with Honchell's consent. Officers found a gun in the backseat at May's feet and the brown bag in the trunk, inside of which was methamphetamine.

On August 8, 2003, the State charged May with two felony counts: (1) Count I, manufacturing methamphetamine; and (2) Count II, simultaneously possessing methamphetamine and a firearm. A jury trial took place April 22, 2004. The jury acquitted May on Count I but found him guilty on Count II. The trial court sentenced May to eight years, to be served consecutive[ to] the sentences in two other matters.

On direct appeal, May asserted that the evidence was insufficient to support his conviction. Specifically, May claimed that the State failed to demonstrate that he constructively possessed the methamphetamine because the bag containing the methamphetamine had been locked in Honchell's trunk and he did not have control over it. We rejected May's contention and affirmed his conviction.

May raised several issues in his petition for post-conviction relief. The post-conviction court denied his petition following a hearing. This appeal ensued.

3

**DISCUSSION AND DECISION**

The petitioner bears the burden of establishing his grounds for post-conviction relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); Harrison v. State, 707 N.E.2d 767, 773 (Ind. 1999), cert. denied, 529 U.S. 1088 (2000). To the extent the post-conviction court denied relief in the instant case, May appeals from a negative judgment and faces the rigorous burden of showing that the evidence as a whole "'leads unerringly and unmistakably to a conclusion opposite to that reached by the [] court.'" See Williams v. State, 706 N.E.2d 149, 153 (Ind. 1999) (quoting Weatherford v. State, 619 N.E.2d 915, 917 (Ind. 1993)), cert. denied, 529 U.S. 1113 (2000). It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law. Bivins v. State, 735 N.E.2d 1116, 1121 (Ind. 2000).

May's sole contention on appeal is that he was denied the effective assistance of trial counsel.[1] There is a strong presumption that counsel rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment, and the burden falls on the defendant to overcome that presumption. Gibson v. State, 709 N.E.2d 11, 13 (Ind. Ct. App. 1999), trans. denied. To make a successful ineffective assistance claim, a defendant must show that: (1) his attorney's performance fell below an objective standard of reasonableness as determined by prevailing professional norms; and (2) the lack of reasonable representation prejudiced him. Mays v. State, 719 N.E.2d

---

[1] May does not appeal the post-conviction court's resolution of the other issues raised in his post-conviction petition.

1263, 1265 (Ind. Ct. App. 1999) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)), trans. denied.

Deficient performance is representation that fell below an objective standard of reasonableness by the commission of errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. Roberts v. State, 894 N.E.2d 1018, 1030 (Ind. Ct. App. 2008), trans. denied. Consequently, our inquiry focuses on counsel's actions while mindful that isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render counsel's representation ineffective. Id. Even if a defendant establishes that his attorney's acts or omissions were outside the wide range of competent professional assistance, he must also establish that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. See Steele v. State, 536 N.E.2d 292, 293 (Ind. 1989).

Here, May contends that his trial counsel, James Riester, did not adequately impeach Honchell using her allegedly inconsistent statements regarding when and how she knew that there was anhydrous ammonia in the trunk of her car.[2] In particular, May points out that, during her deposition, Honchell initially testified that she did not know prior to the officers' search of her car that there was anhydrous ammonia in the trunk. But when she was subsequently asked about the factual basis for her guilty plea, she

_____

[2] In his post-conviction petition, May also contended that his trial counsel's performance was deficient in that he did not question Honchell about several packages of ephedrine or pseudoephedrine officers found in plain view in her apartment. But May does not address that contention in the argument section of his brief on appeal other than a passing remark in the concluding paragraph of that section, namely, a vague reference to the jury's failure to hear about Honchell's "apartment's use to store key ingredients[.]" Appellant's Brief at 20. But May references this contention more extensively in his reply brief. To the extent May intended to raise this issue on appeal, the issue is waived. See Ind. Appellate Rule 46(C).

explained that she had seen Justin place a jar of anhydrous ammonia in the trunk of her car a few days prior to the search. Then, at trial, Honchell testified that no one had had access to the trunk of her car for one week prior to the officers' search. And while she initially testified that she did not know what was in the brown bag in the trunk prior to the officers's search, when she was subsequently asked to explain her guilty plea to the jury she stated that, between the time they had left the house and the officers' search of her car, Justin had told her that there was anhydrous ammonia in the brown bag.

In other words, May contends that Riester was ineffective in that he did not question Honchell regarding her inconsistent statements "about how she knew she was illegally transporting anhydrous ammonia in such a way that diverted attention away from a recent act committed by her boyfriend, in which she was complicit, that was similar to the charge against John," and her "lie[] when she told the jury no one had accessed her trunk or put anything else in her trunk in the days leading up to the search of her vehicle[.]" Reply Brief at 1. May maintains that "[t]here is more than a reasonable probability that[,] had the jury heard" about these inconsistencies in Honchell's story, "they would not have voted to convict John May of putting a bag containing methamphetamine in the trunk of her car." Appellant's Brief at 20. We cannot agree.

Our supreme court has held that the method of impeaching witnesses is a tactical decision and a matter of trial strategy that does not amount to ineffective assistance. Kubsch v. State, 934 N.E.2d 1138, 1151 (Ind. 2010). In Kubsch, the defendant asserted in his petition for post-conviction relief that his trial counsel "rendered deficient performance for not using all available evidence" to impeach a key witness, including

6

evidence "of a theft conviction and a false report of a rape" made by the witness. Id. Our

supreme court rejected that contention, pointing out that defense counsel had impeached

the witness' credibility using other means. Id. And in Bivins v. State, 735 N.E.2d 1116,

1134 (Ind. 2000), our supreme court rejected a similar argument and held that:

> While there were inconsistencies between some of the out-of-court and in-court statements and between the in-court testimony of these two witnesses that might have been useful for impeachment purposes, counsel is permitted to make reasonable judgments in strategy. See Olson v. State, 563 N.E.2d 565, 568 (Ind. 1990) and Fugate v. State, 608 N.E.2d 1370, 1373 (Ind. 1993) (each holding that the method of impeaching witnesses was a tactical decision, a matter of trial strategy, and did not amount to ineffective assistance of counsel). Here, trial counsel repeatedly placed the credibility of Chambers and Weyls into question. In opening argument, trial counsel vigorously raised its "the deal with the squeal" theme, emphasizing the fact that Chambers entered into a favorable plea agreement and that both Chambers and Weyls were granted use-immunity. As discussed supra, counsel repeatedly attacked the credibility of Chambers and Weyls using the plea agreements, the use-immunity arrangements, and their prior convictions. The post-conviction court's findings support its conclusion that counsel's cross-examination of Chambers and Weyls was not deficient within the meaning of the first prong of the Strickland test and, as such, Bivins was not denied the effective assistance of counsel to which he was entitled.

(Emphasis added).

Here, at the post-conviction hearing, Riester testified in relevant part as follows:

Q:     Would you, what would be your reason for not ensuring that the jury knew that Amy testified at trial that the only reason she knew about what was in the trunk was because Justin had told her that John put a bag with anhydrous [ammonia] in it, as opposed to what she told you at her deposition that Justin had put a jar of anhydrous [ammonia] in the car three days earlier?

A:     I believe her testimony at trial concerned what she, she [sic] was testifying about a jar that was in the bag. Because Justin told her that there was a bag of or there was a jar of anhydrous [ammonia] in the bag is I believe what she testified to at trial. That's not inconsistent with her saying

7

to Justin [sic] had put a different jar in the trunk of the car three days earlier.

Q:      So you didn't [sic].

A:      Which I think they were talking about two different jars.

Q:      You didn't see that as helpful to the defense that Justin had put a jar of anhydrous [ammonia] in the car three days before?

A:      Well, I think the issue was, what was in the bag and who put it there. The real issue was, I don't think there was any discrepancies, was any controversy as to what was in the bag. The question was who put the bag in the trunk.

PCR Transcript at 34-35. While Riester admitted that his general practice is to impeach a witness at trial if they say something inconsistent, his explanation for not having gone into the alleged inconsistencies asserted by May in his post-conviction petition is reasonable.

Moreover, Riester cross-examined Honchell regarding the enormous benefit she received by pleading guilty. Instead of a possible ten or twenty-year sentence, Honchell testified that she spent twenty days in jail. And during his closing argument, Riester emphasized, repeatedly, that Honchell was not credible because it was in her self-interest to testify that it was May who placed the brown bag in the trunk. Further, the evidence showed Honchell's bias because she was Justin's girlfriend. And Honchell was exposed for having lied about whether she knew there was anhydrous ammonia in the trunk of her car before the officers performed the search.

The post-conviction court found and concluded in relevant part as follows:

. . . Attorney Riester presented a lengthy defense at trial consisting of the following witnesses: Justin May, Donna May, Amanda "Kristy" May,

8

Jerry May, Ina Fields, and Edna Myers. These witnesses advanced the defense theory that Gerald May was attempting to set up Petitioner in order to get him out of the house, and that Amy Honchell was lying about seeing John D. May place the bag containing methamphetamine in the trunk of her car. Attorney Riester was at least partially successful in his defense as Petitioner was acquitted of the higher level offense of Dealing in Methamphetamine, as a Class B felony.

8. Petitioner has presented no evidence other than to suggest that Attorney Riester failed to ask certain questions that in hindsight might have been relevant to impeachment of Amy Honchell. This is reasonably a matter of trial strategy that does not amount to ineffectiveness. Additionally, Attorney Riester presented a vigorous defense which was successful in acquitting Petitioner of the higher level charge. Finally, upon questioning by Petitioner's attorney, Attorney Riester gave valid strategic reasons for everything he did at the trial level. Petitioner has therefore failed to meet his burden.

Appellant's App. at 227. We cannot say that the evidence as a whole "'leads unerringly and unmistakably to a conclusion opposite to that reached by the [] court.'" See Williams, 706 N.E.2d at 153. Thus, we affirm the post-conviction court's judgment.

Affirmed.

BAKER, J., and CRONE, J., concur.