887 F.2d 266
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Lyle BARBER, Defendant-Appellant.
 No. 89-3008.
 United States Court of Appeals, Sixth Circuit.
 Oct. 16, 1989.
 
 Before KENNEDY and KRUPANSKY, Circuit Judges, and WENDELL A. MILES, Senior District Judge.[1]
 PER CURIAM.
 
 
 1
 Appellant appeals his conviction of December 7, 1988, when a jury returned a verdict of guilty to an indictment charging bank robbery pursuant to the provisions of 18 U.S.C. Sec. 2113(a). Following consideration of the record, Barber's assignments of error, and governing case law, the court concludes that the judgment below should be affirmed.
 
 
 2
 On November 26, 1984, Stacy Thomas was working as a bank teller in Cleveland, Ohio. A man came to her window carrying two withdrawal slips on which there was some handwriting and a note written on a piece of white notebook paper. The paper was about the size of an index card and had no holes. He handed her the slips and note and asked for large bills. He held out a small bag which looked like a shaving kit. The teller put about $700 in the bag. She also put the notes in the bag and the robber turned to leave. Security guard Alex Pold pursued the man after Thomas pointed him out. The robber pulled away from Pold's grasp after Pold asked if he could talk to him. The robber disappeared. Neither Pold nor Thomas could identify the robber at trial. Thomas did recall his approximate age, his build, his beard and his glasses. The photos showed a short afro hairdo and sunglasses. Bank records indicated $757 were taken.
 
 
 3
 James Hibbits, Barber's half-brother, testified that Barber admitted to him that he had robbed a bank. Hibbits also testified that although unemployed at the time, Barber gave him $470 in cash to buy a money order. He also acknowledged that Barber was pressed for money at that time. Barber's ex-girlfriend, Twilla Hughley, testified that she was living with him at the time of the robbery, that she had problems paying her rent, and that Barber was so concerned he decided to rob a bank to do something about it and to prove himself to her. She testified he asked her to write a robbery note for him. She tore a piece of white notebook paper down to one-fourth of its original size. She believed she removed the ringholes and left margin. She gave it to Barber. She testified that he returned two hours later and told her he had robbed a bank. He said he had stood in line after filling out some bank slips, handed the lady teller the note, was later approached by a security guard whom he had pushed down or hit and then ran out the door. She said that he returned with the note, the slips and the money. There was between $700 and $800. He gave her about $300 for rent. She also said that he saw the newspaper article about the incident and said "This is the bank that I robbed. This is the one." He said he had told his half-brother about the robbery, asked her not to say anything about it, and that he was leaving for Florida. She said that when she first saw the FBI's surveillance photos, she knew they were of Barber but that she was afraid to say anything that would implicate herself. She said she had shaving kit travel bags in her apartment at the time. She was ultimately given immunity for her involvement in the crime.
 
 
 4
 The FBI agent on the case, Kenneth Riolo, testified about the similarities between the general description of the robber and David Lyle Barber. He testified that he had interviewed Barber on February 19, 1987 and formed the opinion that he was the robber depicted in the surveillance photographs. He also testified that he observed and spoke with Barber on June 23, 1987 and told him at that time that it was his opinion that Barber was depicted in the photos. Also, Riolo testified that on that date Barber said he felt the only evidence against him was Hughley's statement and his half-brother's testimony. He said he was unsure whether to cooperate or to take a chance on a jury acquittal. He said he believed the robbery was the government's fault because of the high price of housing for his girlfriend. He then said he would discuss the situation with his wife and get back to the FBI. Barber, his wife, and his mother all gave their opinions that he was not depicted in the robbery photos. Barber and his wife denied that he had made any admission to Agent Riolo, although his wife admitted that in previous testimony she had stated that she had not heard the entire conversation.
 
 
 5
 Barber now claims error in three respects: 1) In failing to suppress Barber's statement in which he admitted his guilt; 2) in allowing the opinion testimony of the FBI agent as to his belief that Barber was the person depicted in bank surveillance photographs; 3) the evidence at trial was allegedly insufficient to sustain a verdict of guilty.
 
 
 6
 Turning to the question of the admission of guilt by Barber in the present of Agent Riolo, the voluntariness of a statement is judged upon the totality of the circumstances to determine whether the accused's will was overborne. United States v. Murphy, 763 F.2d 202 (6th Cir.1985). The burden of proof is on the defendant who seeks to suppress. United States v. Feldman, 606 F.2d 673 (6th Cir.1979), cert. denied sub nom Zalmanowski v. United States, 445 U.S. 961 (1980). The standard of proof is preponderance of the evidence. Once a defendant meets the burden, it shifts to the United States. The standard of review is clearly erroneous. United States v. McGlynn, 671 F.2d 1140 (8th Cir.1982). In this case, Barber's claims focus upon events which happened months before the June 1987 confession. The FBI agent spoke with Barber in February 1987 at his mother's house for 20-25 minutes, at which time and place he was told that they believed he was the bank robber. They asked him to come in to the FBI office for fingerprints and photographs and further interviewing. In June 1987 Barber confessed to the robbery while Agent Riolo interviewed him at his residence. He was questioned informally at the kitchen table and the record reflects the FBI made no threats and were polite. Barber finally decided to discuss his options with his wife. To characterize the confession as anything other than voluntary would be totally unrealistic. Barber's assignment of error in this respect must be denied.
 
 
 7
 Barber further alleges that the lower court erred in allowing the lay testimony by FBI Agent Riolo that it was Barber who was depicted in the photographs taken at the scene of the robbery. Rule 701 of the Federal Rules of Evidence provides as follows:
 
 
 8
 If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.
 
 
 9
 In this case Barber claims that the requirements of Rule 701 were not satisfied. Specifically, he contends there was no rational basis for the agent's opinion since there were inadequate prior contacts between the agent and himself. He further argues there was no need for such testimony because Barber's appearance at trial was so similar to the way it was when the agent saw him. The court is in agreement with defendant that error was committed in allowing this testimony. The FBI agent saw Barber in person for only a matter of minutes before he concluded it was Barber in the pictures. He saw Barber for less than three hours prior to the confession. The court in United States v. Allen, 787 F.2d 933, 936 (4th Cir.1986) highlighted the fact that in that case, the agent was able to observe the defendant over a period of time and in a variety of circumstances. These factors do not present themselves in the case at bar. Further, in United States v. Calhoun, 544 F.2d 291 (6th Cir.1976) this court was critical of the government's use of the opinion of the defendant's parole officer to prove that the defendant was the person shown in the surveillance photos. We note that in Calhoun the officer even had "close familiarity" with the defendant's appearance at the time of the offense based on prior association. Id. at 295. In this case Riolo could claim no familiarity, and indeed more than two years elapsed between the robbery and Riolo's first observation of Barber. Further, in Calhoun the defendant looked different at trial than on the day of the offense. In this case neither Barber, his girlfriend, nor his mother believed his appearance was much different. In point of fact, the jury in this case was as equipped as Riolo to formulate an opinion as to the likeness in the photos. We are compelled to draw the conclusion that error was committed in allowing the identification testimony.
 
 
 10
 On the whole record, however, we hold that the admission of such testimony constituted harmless error. The impact of Riolo's identification cannot be said to have affected Barber's substantial rights at trial. The bank teller's description of the robber was consistent with Barber's actual appearance at the time. On four occasions Barber admitted to having committed the robbery--twice to his girlfriend, once to his half-brother and once to the FBI. Further, Barber's statement to his girlfriend included a number of details surrounding the robbery which would only be known by someone involved in the incident. Ms. Hughley's description of the demand note and withdrawal slips matched that given by the bank teller, and she witnessed Barber counting the amount of money actually taken during the robbery. She stated she had several shaving kits such as the one used in the robbery. Barber had shown a desire to help his girlfriend meet her rent payments and announced his intention to rob a bank to accomplish this. When he had the demand note prepared, he left to rob a bank and a short time later returned to count a substantial amount of cash. Finally, he showed his girlfriend the newspaper article concerning the robbery and identified it as his own. We are also mindful that the testimony was not admitted as that of an expert. In that light, any error in allowing the identification testimony of Riolo must necessarily have been harmless.
 
 
 11
 For many of the same reasons, the overwhelming weight of the evidence likewise falls in favor of upholding the conviction. We cannot agree with Barber's characterization of the evidence against him as "meager." Appellant's brief at 12. Case law confines reversal to "cases where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978) (footnote omitted). No such failure is evident in this case; indeed, the evidence against Barber is ample and highly persuasive. Thus, we hold that Barber's final assignment of error must be denied, and his conviction is hereby AFFIRMED.
 
 
 
 [1]
 The Honorable Wendell A. Miles, United States Senior District Judge for the Western District of Michigan, sitting by designation