FILED
United States Court of Appeals
Tenth Circuit

May 19, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES EDWARD ALLUMS,

Defendant-Appellant.

No. 09-4136
(D. Utah)
(D.C. No. 2:08-CR-30-TS-1)

---

ORDER AND JUDGMENT[*]

---

Before **HENRY**, **MURPHY,** and **O'BRIEN**, Circuit Judges.[**]

---

James Edward Allums was convicted after a jury trial of (1) armed bank

robbery of the Salt Lake Schools Credit Union on November 15, 2007; and (2)

attempted robbery of the Home Savings Bank on November 30, 2007, both in

violation of 18 U.S.C. § 2113(a) and (d).  The jury acquitted Mr. Allums of a

---

[*]  This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]  After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

third robbery charge, and the district court sentenced him to 120 months' imprisonment followed by 60 months' supervised release.

In this appeal, Mr. Allums contends that the district court erred in admitting the testimony of a state probation officer who identified Mr. Allums's voice on a videotape of the attempted robbery of the Home Savings Bank. In particular, Mr. Allums asserts that the officer's statement on direct examination that he "work[ed] for the adult probation and parole" was more prejudicial than probative under Rule 403 of the Federal Rules of Evidence because it informed the jury of his criminal history. *See* Rec. vol. III, at 214. Mr. Allums maintains that the error was not harmless and that he is entitled to a new trial.

The admissibility of the probation officer's testimony about his occupation presents a close question, but we need not reach it here. Instead, we conclude that, even assuming that the district court abused its discretion in admitting the evidence, any such error was harmless. We therefore affirm Mr. Allums's convictions.

## I. BACKGROUND

A federal grand jury indicted Mr. Allums for: (1) the robbery of a Salt Lake City K-Mart on October 23, 2007; (2) the robbery of the Salt Lake City Schools Credit Union on November 15, 2007; and (3) the attempted robbery of the Home Savings Bank on November 30, 2007. All counts charged violations of 18 U.S.C. § 2113(a) and (d).

## A. Officer Howard's Testimony

Prior to trial, the prosecution filed a motion stating that it intended to call Mr. Vaughn Howard, Mr. Allums's former probation officer. The prosecution reported that Officer Howard had viewed a surveillance tape that recorded the attempted robbery and that he would testify that Mr. Allums was the perpetrator. In order to limit the prejudice that might result from identifying Officer Howard as Mr. Allums's probation officer, the prosecution proposed that Officer Howard describe himself as "a friend, associate, or acquaintance of the defendant's." Rec. vol. I, doc. 123, at 4-5. Mr. Allums objected to Officer Howard's proposed testimony, asserting that the testimony would be unduly prejudicial. In Mr. Allums's view, even omitting the fact that Officer Howard was his probation officer and describing him as "a friend, associate, or acquaintance" would unfairly limit cross examination.

The district court issued a pretrial ruling allowing Officer Howard to testify. The court explained that "evidence that the voice on the recording [of the attempted robbery of the Home Savings Bank] is highly probative of Defendant's guilt" and that "the risk of undue prejudice to Defendant is low, so long as the government does not inquire, on direct, regarding the specific nature of the relationship between the parole officer and Defendant." *Id.* vol. II, at 10-11 (Memorandum & Order, filed March 12, 2009, at 4-5).

At a bench conference during the trial, the district court clarified its ruling. It explained to the attorneys that "the Court's previous order did not intend to preclude information about what it is [Officer Howard and a Salt Lake City Police Detective] did for a living." Supp. Rec. vol. I, at 133.

At trial, Officer Howard gave the following testimony:

Q.: Sir, where are you employed?

A.: I work for the adult probation and parole.

. . . .

Q.: How long had you known Mr. Allums prior to say October, November of 2007?

A.: I've known him for about six months.

Q.: In the course of knowing him, how often had you seen him during that six-month period of time?

A.: I have some notes here just to kind of refresh my memory, if you'll let me look at them real quick. I came into contact with him about 13 times about the last—between ten and 15 minutes per visit.

Q.: And did you also go to his house and see him there?

A.: Yeah, I did that. You know, went to his house about eight times.

Q.: Did you ever talk to Mr. Allums on the telephone?

A.: I did. I talked to him about 15 times.

Rec. vol. III, at 213-14. Officer Howard then indicated that he had identified Mr. Allums's voice, both in a voice line-up and in the surveillance video of the Home Savings Bank robbery attempt.

Mr. Allums's attorney objected to Mr. Howard's testimony. The district court overruled the objection, citing the prior ruling that "this witness, the officer, would be able to be identified by [his] profession," and observing that there was a need for "there to be some context" for the jury as to a witness's profession. *Id.* at 217.

### B. Other Evidence Regarding the Attempted Robbery

Don and Jeff Ballard, who both worked at the Home Savings Bank, described the attempted robbery. They stated that, on November 30, 2007, at about 4:30 p.m., a man wearing a ski mask and coat with the hood up entered the bank and approached a teller with a knife. Don Ballard threw a chair down from the balcony and hit the man on his left shoulder, knocking him to the floor. The man got up from the floor, tore off his mask, swore at Don Ballard, and ran out the front door. Don Ballard saw the man's face for one or two seconds and observed that he was African-American.

Jeff Ballard testified that he saw the man come around the back of the building into the alley. He reported that the man was African-American and was wearing a dark blue coat and no longer had on a hood or mask.

Neither of the Ballards identified Mr. Allums in a pretrial photographic lineup. However, immediately after his direct testimony, Don Ballard told the prosecutor that he recognized Mr. Allums as the person who had attempted to rob the Home Savings Bank. The district court permitted the prosecution to reopen its direct examination, and Don Ballard then testified that "I looked at [Mr. Allums] and beyond a reasonable doubt he was the man that was in my lobby." Rec. vol. III, at 210.[1]

The prosecution also presented testimony from Salt Lake City Police Detective Stephen Hartney, who was contacted by dispatch on the day of the attempted robbery. Detective Hartney obtained the bank's surveillance tape and, upon viewing it, identified the suspect as Mr. Allums. Detective Hartney explained to the jury that he had interviewed Mr. Allums approximately five months before the attempted robbery and that he recognized Mr. Allums based on his demeanor, physical features, posture, movements, his teeth, and the sound of his voice.

In addition, Mr. Allums's nephew Kaderius Allums testified that he had viewed the videotape of the Home Savings Bank robbery. Kaderius told the police the voice on the videotape sounded like Mr. Allums, that "it's raspy

---

[1] Mr. Allums notes in his appellate brief that at the time of Don Ballard's in-court identification, Mr. Allums was seated at counsel table and was the only African-American person in the courtroom. Morever, by the time of trial, one and a half years had elapsed since the attempted robbery.

like in his voice," *id.*, at 288, and he also told the police that if they had spoken with Mr. Allums, they too would recognize his voice on the video. *Id.* at 287. Kaderius further acknowledged his grand jury testimony that the voice on the surveillance tape "sounded just like [Mr. Allums]." *Id.* at 303-04.

Salt Lake City police arrested Mr. Allums on December 2, 2007. On that day, two detectives went to his house and found a blue coat and a pair of hiking boots that resembled the items worn by the man who attempted to rob the Home Savings Bank. During the trial, Mr. Allums tried on the coat and boots, and they fit him.

Finally, the prosecution offered the surveillance videotape of the attempted robbery. It recorded the offender's voice, as well as his leaving the bank with his mask removed.

### C. Evidence Regarding the K-Mart and Salt Lake Schools Credit Union Robberies

The prosecution also presented evidence regarding the October 23, 2007 robbery of the K-Mart and the November 15, 2007 robbery of the Salt Lake Schools Credit Union.[2] As to the Salt Lake Schools Credit Union robbery, an employee testified that, on November 15, 2007, a man jumped over the counter and pointed a knife at her and a teller. He was wearing a dark, hooded sweatshirt, a loose knit cap pulled over his face, leather gloves, jeans, and tennis shoes, and

---

[2] In light of the jury's acquittal on the K-Mart robbery charge, we will not summarize the prosecution's evidence on that count any further.

- 7 -

he took money from the till and left. The robbery was filmed by a surveillance camera, but there was no audio recording. The prosecution submitted the videotape to the jury.

When the robber jumped on the counter of the credit union, he left two partial shoe prints, bearing an Adidas logo. After the robbery, police detectives retrieved a pair of gray Adidas shoes from the porch of Mr. Allums's residence. The shoes belonged to James Hill, a friend of Mr. Allums's nephew Kaderius. A supervisor at the Salt Lake City Police Crime Lab testified that the shoe prints on the credit union counter could have been made by the Adidas shoe taken from Mr. Allums's residence, or by another shoe with the same general characteristics (size, shape, outsole design, and wear pattern). However, the supervisor further testified that he had never seen two different shoes with the same size, shape, tread pattern, and wear pattern.

### D. Additional Evidence Pertaining to All Counts

The prosecution also introduced cell phone records indicating that, on the days in question, Mr. Allums's phone had been used before and after the robberies in the areas surrounding each of the financial institutions.

Finally, the prosecution played for the jury audio tapes of phone calls

that Mr. Allums made from jail after he was arrested for the charged robberies. The jury thus had the opportunity to hear Mr. Allums's voice and to compare it with the voice of the offender on the Home Savings Bank surveillance tape.

As we have noted, the jury acquitted Mr. Allums of the K-Mart robbery and convicted him of the robbery of the Salt Lake Schools Credit Union and the attempted robbery of the Home Savings Bank.

## II. DISCUSSION

On appeal, Mr. Allums argues that the district court erred in allowing Officer Howard to testify that he worked for the probation and parole department and in allowing him to describe his contacts with Mr. Allums. From that testimony, Mr. Allums maintains, the jury could have inferred that Officer Howard was Mr. Allums's parole officer, and this inference was prejudicial. In his view, "[a]n individual with a parole officer is an individual with a criminal history, and the jury was left to speculate about the nature and extent of that history." Aplt's Br. at 14. He contends that, under Rule 403 of the Federal Rules of Evidence, this testimony was more prejudicial than probative and should have been excluded. He further argues that the evidence was not harmless and that he is entitled to a new trial.

Rule 403 provides that "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." "Under Rule 403's balancing test, it is not enough that the risk of unfair prejudice

be greater than the probative value of the evidence; the danger of that prejudice must substantially outweigh the evidence's probative value." *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008) (citations omitted). "In engaging in the requisite balancing, we give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Id.* (internal quotation marks and citation omitted).

We review the district court's decision to admit evidence for abuse of discretion. *United States v. Smith*, 534 F.3d 1211, 1218 (10th Cir. 2008). "We cannot reverse a district court's ruling if it falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical." *Id.* (internal quotation marks and citation omitted).

### A. Courts have taken varying approaches to testimony identifying a witness as a probation officer.

Mr. Allums's contentions regarding the potential prejudice of Officer Howard's testimony are supported by case authority. As this court has observed, "[t]estimony by a defendant's probation officer, if the officer's occupation is revealed to the jury, often may increase the potential for unfair prejudice to the defendant by highlighting the defendant's criminal history." *United States v. Griffin*, 389 F.3d 1100, 1103 (10th Cir. 2004). "Accordingly, trial courts should exercise caution in their admission of such testimony." *Id.*; *see also United States v. Pierce*, 136 F.3d 770, 776 (11th Cir. 1998) ("Identification testimony from law

enforcement or corrections personnel may increase the possibility of prejudice to the defendant either by highlighting the defendant's prior contact with the criminal justice system, if the witness's occupation is revealed to the jury, or by effectively constraining defense counsel's ability to undermine the basis for the witness's identification on cross-examination, if the witness's occupation is to remain concealed."); *United States v. Pace*, 10 F.3d 1106, 1116 (5th Cir. 1993) (stating that "the appearance of these witnesses [probation or parole officers] before a jury always carries the potential for the interjection of unfair prejudice to the defendant"); *United States v. Butcher*, 557 F.2d 666, 670 (9th Cir. 1977) (stating that "use of lay opinion testimony by policemen or parole officers is not to be encouraged, and should be used only if no other identification testimony is available to the prosecution").

In light of this potential prejudice, some courts have found reversible error in the admission of probation officers' testimony. For example, in *United States v. Calhoun*, 544 F.2d 291 (6th Cir. 1976), the Sixth Circuit reversed a robbery conviction on the grounds that the trial court had abused its discretion in allowing the defendant's parole officer to identify him from a surveillance photograph. It reasoned that "[e]ven though a more complete and uninhibited examination of [the parole officer] might not have brought out the precise crime for which [the defendant] was then on parole, the fact that he was on parole itself may have been even more prejudicial than the jury's simple knowledge of his prior conviction of

a felony." *Id.* at 296. In the Sixth Circuit's view, "[p]arole suggests to the jury that the crime was recent and that it was one which required imprisonment. The knowledge that [the defendant] was on parole at the time of the alleged offense could also arouse an emotional reaction among the jurors, especially those who harbor strong feelings about recidivism and the premature release of those in prison for crimes." *Id.*

Notably, the *Calhoun* court reached this conclusion even though the probation officer did not identify himself by his profession and only stated that he had met the defendant nine or ten times, in meetings lasting fifteen minutes to an hour. *See* 544 F.2d at 293 n.1 (setting forth direct and cross examination in full). The court reasoned that the defendant could not effectively cross-examine the parole officer without risking the disclosure of his criminal record and that such disclosure would be unduly prejudicial. *See also State v. Martinez*, 607 P.2d 137 (N.M. Ct. App. 1980) (holding that the trial court abused its discretion in allowing a parole officer to testify that he recognized the defendant's signature and reversing convictions for obtaining a controlled substance by misrepresentation); *State v. Bragg*, 221 N.W.2d 793, 797 (N.D. 1974) (reversing a burglary conviction in part on the ground that the trial court erred in allowing a parole officer to testify because the testimony "allow[ed] the prosecution to put

before the jury the circumstantial evidence from which the jury could reasonably infer that the defendant had a prior criminal record").[3]

In contrast to the Sixth Circuit's decision in *Calhoun*, this court has taken a more measured approach. In *United States v. Contreras*, 536 F.3d 1167, 1169 (10th Cir. 2008), the trial court allowed the prosecution to present testimony from a parole officer who identified the defendant from photographs taken by a video surveillance camera during the charged bank robbery, "but required the Government to limit its direct examination to exclude the details of [the witness's] role as [the defendant's] probation officer." We held that the trial court did not abuse its discretion in allowing the testimony, and we rejected *Calhoun*'s per se approach. We reasoned that the defendant "could freely cross-examine [the probation officer], either by (1) "limit[ing] the scope of his cross-examination to exclude details of the nature of their relationship and focus

---

[3] Some courts have rejected the contention that the disclosure of a probation officer's profession is unduly prejudicial. *See, e.g., Dunnigan v. Keane,* 137 F.3d 117, 126 (2d Cir. 1998) (concluding, in a federal habeas action, that a trial judge plausibly ruled that a probation officer's profession was relevant to the evaluation of the officer's credibility); *Commonwealth v. Carpenter*, 515 A.2d 531, 535 (Pa. 1986) (concluding that "the mention of the witness' occupation as a parole officer and the fact that he knew the appellant did not convey to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense or record" and that "[s]uch an inference, while certainly *possible*, was most certainly not conveyed to the jury by the mere mention of the witness' occupation and the fact that he knew appellant, as there are an infinite variety of ways that appellant might otherwise know a person who was a parole officer").

solely on questions regarding whether [the defendant's] past interactions with [the defendant] adequately enabled her to identify him from the surveillance photographs[;]" or (2) electing to "fully cross-examine [the probation officer] without concern about testimony regarding her role as [the defendant's] probation officer." *Id.* at 1171-72.

Our approach in *Contreras* comports with decisions of other circuits, which have rejected *Calhoun*'s per se rule and considered the admission of parole and probation officer testimony on a case-by-case basis. As the Fifth Circuit has observed, "[s]ubsequent cases from the Fourth, Eighth, and Ninth Circuit Courts of Appeals have criticized *Calhoun*, where they have not rejected it outright" and "reject[ed] an inflexible holding that a trial court's decision to allow a defendant's parole officer to testify against the defendant is a per se violation of Rule 403." *Pace*, 10 F.3d at 1115 (collecting cases); *see also Pierce*, 136 F.3d at 776 (holding that the trial court did not abuse its discretion in allowing a probation officer to testify that she recognized the defendant from a bank surveillance video, even though she testified that she knew the defendant solely in her capacity as a probation officer); *United States v. Allen*, 787 F.2d 933, 938 (4th Cir. 1986) (finding no abuse of discretion in the admission of a probation officer's testimony when the occupation of the witness was not disclosed), *vacated on other grounds*, 479 U.S. 1077 (1987); *United States v. Farnsworth*, 729 F.2d 1158 (8th Cir. 1984) (same).

Some of these courts have concluded that trial judges should employ procedures to minimize the potential prejudice of the testimony. These procedures include (1) allowing the defendant, outside the presence of the jury, to object to the introduction of the testimony and to cross-examine the witness so that the judge may "consider fully the value and possible prejudice from the use of this testimony" before deciding whether to admit it, *Allen*, 787 F.2d at 938, and (2) instructing the prosecution not to reveal the occupation of the witness before the jury. *Id.; see also Pace,* 10 F.3d at 1116 ("strongly urg[ing] all trial courts in this circuit to adopt prophylactic procedures for the use of testimony by a probation or parole officer" and explaining that "[s]uch testimony should not be sprung upon the court, but timely revealed so the trial court, outside the jury's presence, may gauge the anticipated testimony upon the weight scales of Rule 403"); *Farnsworth,* 729 F.2d at 1161 (endorsing the trial judge's "direct[ing] the government not to delve into the circumstances of the parole officers' relationships with the defendant").

In Mr. Allums's case, the admissibility of Officer Howard's testimony that he "work[ed] for the adult probation and parole," Rec. vol. III, at 214, presents a close question. Some factors support the district court's decision to allow the testimony, while others suggest that the testimony should have been excluded.

On the one hand, the prosecution commendably notified the court and Mr. Allums of its intention to call Officer Howard and of the potential prejudice that

might result from statements about his occupation. In addition, the prosecution made a reasonable proposal to describe Officer Howard to the jury as Mr. Allums's "friend, associate, or acquaintance." *Id.* vol. I, doc. 123, at 4-5. Further, the prosecution did not attempt to invoke Officer Howard's position as a means of bolstering his credibility, and it did not argue to the jury that the testimony suggested that Mr. Allums had a criminal record that made it more likely that he had committed the charged crimes.

On the other hand, Mr. Allums plausibly argues that, in contrast to both *Contreras*, and the prosecution's initial proposal in this case, Officer Howard's employment as a probation officer was revealed to the jury on direct examination. As a result, the jury could have inferred that Mr. Allums had a criminal record, a fact not relevant to the charged crimes and potentially prejudicial.

In any event, we need not decide whether the district court abused its discretion in admitting the testimony. As we explain below, even if the district court erred, the other evidence supporting Mr. Allums's convictions clearly establishes that the error was harmless. *See Smith*, 534 F.3d at 1220 (assuming that the district court erred in admitting graphic photographs of a murder scene but further concluding that the assumed error was harmless because "the remaining evidence against [the defendant] was so strong"); *United States v. Clifton*, 406 F.3d 1173, 1179 (10th Cir. 2005) (assuming that the district court erred in admitting testimony from a law enforcement agent because the testimony

constituted hearsay and improper impeachment and was unduly prejudicial under Rule 403 but further concluding that the assumed error was harmless).

**B. Assuming that the district court erred in admitting Officer Howard's testimony that he "work[ed] for adult probation and parole," the error was harmless.**

Mr. Allums acknowledges that a non-constitutional error in admitting evidence is harmless unless the evidence affects the substantial right of a party. *See* Aplt's Br. at 14 (internal quotation marks and citation omitted); *see also Griffin*, 389 F.3d at 1104 (stating that "a non-constitutional error is harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect") (internal quotation marks and citation omitted). "We review the record as a whole de novo to evaluate whether the error is harmless, examining the context, timing and use of the erroneously admitted evidence at trial and how it compares to properly admitted evidence." *United States v. Magleby*, 241 F.3d 1306, 1317 (10th Cir. 2001) (internal quotation marks and citation omitted). "Where the wrongly admitted evidence was cumulative of other properly admitted evidence, it is less likely to have injuriously influenced the jury's verdict." *Clifton*, 406 F.3d at 1179 (alteration, citation, and internal quotation marks omitted). The prosecution must establish by a preponderance of the evidence that the error in admitting the evidence at issue was harmless. *Cerno*, 529 F.3d at 939.

Here, Mr. Allums maintains that the prosecution cannot establish that the alleged error in admitting Mr. Allums's testimony was harmless. He invokes several of the gaps in the remaining evidence. In particular, he points to the fact that the offender wore a mask throughout the the K-Mart and Salt Lake Schools Credit Union robberies, making eyewitness identification impossible. Mr. Allums further contends that the eyewitnesses to the Home Savings Bank robbery were not particularly convincing: neither Jeff Ballard nor Don Ballard identified Mr. Allums in a pretrial lineup, and athough Don Ballard subsequently testified at trial that Mr. Allums was the man who attempted the robbery, he did so only after seeing Mr. Allums (the only African American in the courtroom) seated at the defendant's table. Finally, Mr. Allums characterizes the prosecution's cell phone evidence as inconclusive, noting that the evidence was substantially similar with regard to all three charged offenses and that the jury acquitted him of the October 23, 2007, robbery of the K-Mart.

We are not persuaded by Mr. Allums's arguments. Most importantly, aside from Officer Howard's testimony, the prosecution presented other witnesses who viewed the surveillance tape from the Home Savings Bank and identified Mr. Allums as the attempted robber. Detective Hartney testified that he had interviewed Mr. Allums approximately five months before the attempted robbery and that he was quite certain that it was Mr. Allums's voice on the surveillance video. Detective Hartney further explained that, in addition to his voice, he

- 18 -

recognized Mr. Allums from his physical features, demeanor, posture, movements, face and teeth. Similarly, Kaderius Allums, Mr. Allums's nephew, testified that the voice on the surveillance video sounded like Mr. Allums's.

In addition to this identification testimony, the prosecution offered substantial evidence to support the two convictions, including (1) evidence of the shoe prints taken from the Salt Lake City Schools Credit Union that closely resembled the prints from the shoes found on porch of Mr. Allums's residence and that fit Mr. Allums; (2) the coat and boots that were also found in Mr. Allums's residence, that resembled those worn by the offender depicted in the Home Savings Bank video, and that fit Mr. Allums; and (3) the cell phone records that placed Mr. Allums near the Salt Lake Schools Credit Union and the Home Savings Bank on the days that the offenses were committed. Moreover, the jury had the opportunity to hear Mr. Allums's voice on the audio tapes of phone calls that he made from jail and to compare his voice to that of the offender on the Home Savings Bank surveillance tape.

Accordingly, we agree with the government that the record indicates by a preponderance of the evidence that any error in allowing Officer Howard to testify that he worked for the probation office was harmless. The challenged testimony neither had a substantial influence on the outcome nor leaves us in grave doubt as to whether it had such effect.

## III. CONCLUSION

We do not reach the question of whether the district court abused its discretion in admitting Officer Howard's testimony about his employment and his contacts with Mr. Allums.  Assuming that the district court did err, we conclude that any error was harmless, and we therefore AFFIRM Mr. Allums's convictions.


Entered for the Court,


Robert H. Henry
Circuit Judge