VILLANTI, Judge.
Latrice Day appeals her conviction for one count of grand theft ($300 or more), contending that the trial court erred by permitting the State to have a police officer identify Day as one of the women *1286 depicted in surveillance video of the crime. While the identification testimony itself was admissible, we agree with Day that the trial court erred by permitting the State to elicit evidence of the witness’s status as a police officer. Therefore, we must reverse and remand for a new trial.
Day was charged with third-degree grand theft after several women entered a Walgreens, loaded their purses with merchandise, and fled the store without paying. Neither the store manager, who witnessed part of the crime, nor any other store employee could identify any of the women; however, the theft was captured on surveillance video. During the investigation of the incident by the Polk County Sheriffs Office, a City of Tampa police detective — Marilyn Lee — happened to see the surveillance video, and she recognized the women from when she worked as a community police officer in the Robles Park area of Tampa. Lee contacted the Polk County Sheriffs Office, and Day and the other women were arrested shortly thereafter.
Prior to trial, Day filed a motion in limine seeking to prohibit the State from having Lee testify as to her identification of Day. Day argued that Lee’s testimony was an improper and unnecessary lay opinion because the jurors could simply watch the surveillance video and determine for themselves whether Day was one of the perpetrators. Day also argued that it was improper for the State to have Lee identify herself as a police officer and testify as to her knowledge of Day because the jurors could infer from that testimony that Day had been involved in prior criminal activity. The trial court denied Day’s motion in limine and permitted Lee to testify.
At trial, the State called Lee as its final witness. The very first question asked by the State was where Lee was employed. Lee responded that she had been employed by the City of Tampa Police Department for twenty-eight years and that she was currently a detective in the latent investigations department. After testifying that she saw the surveillance video on television and recognized Day, the State asked how Lee knew Day. Lee testified that she had recognized Day from “Robles Park,” which Lee explained was a “public housing development ]” in Tampa. Over Day’s renewed objection, Lee testified that she was a “community-oriented police officer” for a period of time and that she handled calls in Robles Park as well as another public housing project. She testified that her job as a community police officer was to get to know the residents, help them feel comfortable with police officers, and help them with calls for police assistance. Lee testified that she recognized Day and the other women involved in the theft because she had “had contact with them” while she was a community police officer. She also testified that she knew some of the women, including Day, only by their street names but that she ultimately identified Day’s legal name “through research and photos that I pulled up ... to match.” Day did not cross-examine Lee, and Day was subsequently convicted as charged.
In this appeal, Day contends that the trial court erred by admitting Lee’s identification testimony, as well as her testimony concerning how she knew Day. We agree in part, and therefore we reverse Day’s conviction and remand for a new trial.
As an initial matter, we disagree with Day’s contention that the trial court erred by allowing Lee to testify to her opinion that Day was one of the women depicted in the surveillance video. This court has held that the State may properly present identification witnesses who are “either eyewitnesses or else capable of independently identifying the individual *1287 from photographs, tape recordings, or similar evidence.” State v. Cordia, 564 So.2d 601, 602 (Fla. 2d DCA 1990) (second emphasis added). The State may introduce such identification testimony when a videotape does not provide clear images of the perpetrators, see, e.g., Hardie v. State, 513 So.2d 791, 792 (Fla. 4th DCA 1987), or simply to support other identification evidence that might be subject to challenge, see Early v. State, 543 So.2d 868, 868-69 (Fla. 5th DCA 1989). Here, Lee testified that she knew Day from when Lee worked in the neighborhood where Day lived. And Day’s defense at trial was misidentifi-cation. Because the store employees were not able to identify any of the perpetrators and because Lee was capable of independently identifying Day, Lee’s testimony was relevant, and the trial court properly admitted it to support the State’s other evidence on the issue of identity.
That said, however, the trial court erred when it permitted the State to also elicit evidence concerning Lee’s position as a Tampa police detective, and this error requires us to reverse and remand for a new trial. While Florida courts have held that police officers may provide in-court lay opinion testimony on the issue of identity, those same courts have held that it is error for the jury to be told that the individuals providing the testimony are police officers. For example, in Hardie, the trial court permitted five Metro-Dade police officers to express their opinions as to the identity of persons — including Har-die — depicted in a surveillance videotape of a smash-and-grab robbery. 513 So.2d at 792. The Fourth District rejected Har-die’s argument that the identification testimony should have been totally excluded, noting that the officers based their testimony on their prior knowledge and contacts with Hardie and that identity was a disputed issue at trial. Id. However, the court reversed Hardie’s convictions and remanded for a new trial because “[t]he trial court should have instructed the state and the witnesses not to divulge the nature of the witnesses’ occupation or the circumstances of their involvement with” him. Id. at 793. The court noted that the disclosure of the fact that the witnesses were police officers made it “inconceivable that the jury would not have concluded that [Hardie] had been involved in prior criminal conduct.” Id. at 793-94.
In reaching this conclusion, the Fourth District relied on United States v. Allen, 787 F.2d 933 (4th Cir.1986), and United States v. Farnsworth, 729 F.2d 1158 (8th Cir.1984). In both of those cases, the courts permitted police officers and parole officers to identify defendants in surveillance videos and rejected the defendants’ arguments that the identifications were unduly prejudicial specifically because “ ‘[n]othing at trial gave the jury any reason to conclude that [the witnesses] were involved in law enforcement.’” Hardie, 513 So.2d at 793 (quoting Allen, 787 F.2d at 937). Under those circumstances, the proper identification testimony did not give rise to an improper inference of prior criminal conduct. Other courts have since applied this same limitation to identification testimony by police officers. Compare State v. Price, 701 So.2d 1204, 1206-07 (Fla. 3d DCA 1997) (holding that the trial court had properly granted Price’s motion for new trial because, while the State properly introduced identification testimony from a police officer who was not a witness to the offense, it improperly elicited testimony that the witness was, in fact, a police officer who knew the defendant from working in his neighborhood), and Edwards v. State, 583 So.2d 740, 741 (Fla. 1st DCA 1991) (reversing defendant’s conviction and remanding for a new trial because the trial court improperly allowed a police officer with no special knowledge *1288 of the defendant to identify her as being depicted in a surveillance video and because the witness was identified to the jury as a police officer but noting that on remand the evidence might be admissible if the State laid the proper predicate and “if Heape were not identified to the jury as a police officer”), with Early, 543 So.2d at 868-69 (affirming conviction when Kenny Williams — a police officer — testified that he had known the defendant for over ten years and that the defendant was the person depicted in the videotape of the offense but doing so specifically because “the jury was never told that Williams was a policeman”).
In this case, the State introduced Lee as a City of Tampa police detective, and Lee testified that she knew Day and the other women in the videotape from when she had worked in their neighborhood as a community police officer. Lee testified that she saw Day and the others on a regular basis and knew their street names. As in Hardie, Edwards, and Price, the introduction of evidence of Lee’s position as a police officer makes it inconceivable that the jury would not have concluded that Day had been involved in prior criminal conduct, and thus the admission of this evidence constituted reversible error.
Moreover, on the facts of this case, we cannot say that this error was harmless. Admittedly, Lee did not testify that Day had committed prior crimes, and there were certainly innocuous ways in which Lee could have come to know Day through community policing. We can envision circumstances under which the fact of a police officer’s employment might be harmless.[1] For instance, if Lee had testified that she was a police officer, she had lived next door to Day for several years, and she knew Day as her neighbor from the neighborhood, Lee’s status as a police officer would be simply an incidental fact that would not necessarily give rise to an implication of prior criminal conduct. But such is not the case here. In this case, the State emphasized Lee’s status as a police detective from its first question, it elicited the fact that Lee recognized Day because Lee had been a community police officer in the public housing project where Day lived, and it elicited Lee’s testimony that she knew Day only by her street name and that she located Day’s legal name through “research and pulling up photos” after seeing the surveillance video. Taken as a whole, Lee’s testimony gives rise to at least a reasonable implication that Day had previously been involved in criminal activity, and therefore the admission of this testimony was not harmless beyond a reasonable doubt.
Accordingly, we reverse Day’s conviction and remand for a new trial. At the new trial, Lee may again testify to her identification of Day as long as the jury is not told of her position as a police officer.
Reversed and remanded for a new trial.
WALLACE and MORRIS, JJ., Concur.

. We can also envision ways in which a defendant, in cross-examining such a witness concerning his or her knowledge of the defendant’s identity, might open the door to testimony about the witness's position as a police officer. However, since Day did not even cross-examine Lee, no such circumstances arose in this case.